JS 44   (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| LYNDA GADSBY | ACE AMERICAN INSURANCE COMPANY, CHUBB LIMITED, & CHUBB INA HOLDINGS, INC. |

**(b)**  County of Residence of First Listed Plaintiff   Sussex
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Burlington
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Lane J. Schiff , Esquire
Console Mattiacci Law LLC, 110 Marter Avenue, Suite 502, Moorestown, NJ 08057   856-854-4000

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 | Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | |
|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* |
| | | | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U.S.C. §12101, et seq. ("ADA"); N.J.S.A. § 10:501, et seq. ("NJLAD"); 29 U.S.C. §2601, et seq. ("FMLA"); N.J.S.A. §34:11B-4, et seq. ("NJFLA")

Brief description of cause:
Plaintiff brings this action against her former employers for unlawful discrimination and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
November 15, 2022

SIGNATURE OF ATTORNEY OF RECORD

---

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **LYNDA GADSBY** : | **CIVIL ACTION NO.** |
| **Milford, DE 19963** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| **v.** : | |
| : | |
| **ACE AMERICAN INSURANCE COMPANY.** : | |
| **533 Fellowship Road, Suite 120** : | |
| **Mt. Laurel, NJ 08054,** : | |
| : | |
| **CHUBB LIMITED** : | |
| **533 Fellowship Road, Suite 120** : | |
| **Mt. Laurel, NJ 08054,** : | |
| : | |
| **&** : | |
| : | |
| **CHUBB INA HOLDINGS, INC.** : | |
| **533 Fellowship Road, Suite 120** : | |
| **Mt. Laurel, NJ 08054** : | |
| : | |
| **Defendants.** : | |

## COMPLAINT

I.    **INTRODUCTION**

Plaintiff, Lynda Gadsby, brings this action against her former employers, Ace American Insurance Company, Chubb Limited, and Chubb INA Holdings, Inc., for unlawful disability discrimination and retaliation, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, *et seq.* ("ADA") and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:501, *et seq.* ("NJLAD"). Plaintiff further brings this action pursuant to the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA") and the New Jersey Family Leave Act, N.J.S.A. §34:11B-4, *et seq.* ("NJFLA") for unlawful discrimination and retaliation.

Plaintiff seeks damages, including back-pay, front-pay, compensatory, punitive, liquidated, costs and attorneys' fees, and all other relief that this Court deems appropriate.

II.    **PARTIES**

1.    Plaintiff, Lynda Gadsby, is an individual and a citizen of the state of Delaware. She resides in Milford, Delaware.

2.    Defendant ACE American Insurance Company is a company with a place of business at 533 Fellowship Road, Suite 120, Mt. Laurel, New Jersey 08054.

3.    Defendant Chubb Limited a company with a place of business at 533 Fellowship Road, Suite 120, Mt. Laurel, New Jersey 08054.

4.    Defendant Chubb INA Holdings, Inc., is a company with a place of business at 533 Fellowship Road, Suite 120, Mt. Laurel, New Jersey 08054.

5.    At all times material hereto, Defendants employed more than fifty (50) individuals.

6.    At all times material hereto, Defendants acted by and through their authorized agents and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

7.    At all times material hereto, Defendants collectively constituted Plaintiff's employer under the joint and/or single employer doctrine.   Upon information and belief, Defendants shared common management, had interrelated operations, and collectively controlled Plaintiff's job duties and responsibilities

8.    At all times material hereto, Defendants were an employer within the meanings of the ADA, FMLA, NJLAD, and NJFLA.

9.      At all times material hereto, Plaintiff was an employee within the meanings of the ADA, FMLA, NJLAD, and NJFLA.

**III.    JURISDICTION AND VENUE**

10.     The causes of action that form the basis of this matter arise under the ADA, FMLA, NJLAD, and NJFLA.

11.     The District Court has jurisdiction over Count I (ADA) and Count II (FMLA) pursuant to 28 U.S.C. §1331.

12.     The District Court has jurisdiction over Count III (NJLAD) and Count IV (NJFLA) pursuant to 28 U.S.C. §1367.

13.     Venue is proper in the District Court pursuant to 28 U.S.C. §1391(b).

14.     On or about September 2, 2021, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC") complaining of the acts of discrimination and retaliation alleged herein ("EEOC Charge"). Attached hereto, incorporated herein, and marked as Exhibit "A" is a true and correct copy of the EEOC Charge (with personal identifying information redacted).

15.     On or about August 23, 2022, the EEOC issued to Plaintiff a Determination and Notice of Rights. Attached hereto, incorporated herein, and marked as Exhibit "B" is a true and correct copy of this notice (with minor redactions for purposes of electronic filing of confidential/identifying information).

16.     Plaintiff is filing this complaint within ninety (90) days from her receipt of this notice.

17.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

IV.    **FACTUAL ALLEGATIONS**

18.    Plaintiff was employed by Defendants from on or about May 26, 2013, until on or about July 3, 2021.

19.    Plaintiff last held the position of Assistant Vice President, Telecommunications North America and Telecom Department.

20.    From the time Plaintiff commenced her employment until March of 2021, Plaintiff reported to Louis Rider, Vice President North America Systems. Rider reported to Steven Reich, Senior Vice President, North America Infrastructure. Reich reported to Michael Jones, Executive Vice President, Global Infrastructure and IT Operations.

21.    Plaintiff consistently performed her job duties in a competent manner and received positive feedback.

22.    On or about August 5, 2020, Plaintiff received a Meets Expectations mid-year performance review rating.  Plaintiff was told that she was doing a great job.

23.    On or about October 15, 2020, Plaintiff was diagnosed with a recurrence of breast cancer.

24.    Plaintiff's medical condition is a disability under the law in that substantially impairs one or more of her major life activities.

25.    On or about October 15, 2020, Plaintiff informed Rider about her diagnosis of breast cancer. Plaintiff explained she would need to see additional doctors and undergo further procedures and appointments.

26.    On or about October 16, 2020, Plaintiff informed Rider that her oncologist confirmed that her breast cancer was a recurrence of breast cancer she suffered at a younger age.

4

Plaintiff further informed Rider that she would know more about her prognosis after undergoing further procedures and appointments.

27.    On or about November 2, 2020, Plaintiff told Rider that she was scheduled for surgery the following week in connection with her breast cancer. Plaintiff expressed that she wanted to continue working and needed her job. Rider responded that Plaintiff needed to focus on her health and take disability leave. Rider told Plaintiff that her job would be there when she returned.

28.    On or about November 3, 2020, Plaintiff went out of work on a medical leave of absence in connection with her breast cancer, including a bilateral mastectomy with multiple reconstruction surgeries, and recovery.

29.    Plaintiff went out on a leave of absence pursuant to the Family Medical Leave Act and New Jersey Family Leave Act.

30.    Plaintiff's medical leave was a reasonable accommodation for her disability.

31.    On or about November 9, 2020, Plaintiff underwent a bilateral mastectomy with sentinel node removal.

32.    During Plaintiff's medical leave, Plaintiff kept Rider informed of her surgeries and recovery.

33.    On or about March 5, 2021, Rider informed Plaintiff that, effective immediately, Plaintiff, along with some of his other direct reports, would no longer report to Rider and instead begin reporting to Sharra Woodward, Senior Vice President, Global Head End User Services.

34.    Rider informed Plaintiff that Woodward was aware of Plaintiff's medical condition. Rider additionally told Plaintiff that Woodward, Reich, and Jones had inquired as to why Plaintiff's medical leave was so long and asked when Plaintiff was returning to work.

35.     On or about March 17, 2021, Plaintiff informed Rider that she was scheduled to return to work on May 4, 2021.  Rider stated that he would inform Woodward of the same.

36.     On or about April 14, 2021, Plaintiff informed Rider that she would likely be returning to work with restrictions as she continued to recover.

37.     On or about April 29, 2021, Plaintiff confirmed her return-to-work date of May 4, 2021, and requested reasonable accommodations for her disability.   Plaintiff provided Defendants with a note from her medical provider, which stated the following: "Ms. Gadsby is clear to return to work on 05/04/2021 with restricted work duties.  Due to recent breast cancer and surgical complication she has limited use of both her left and right arms.  She is unable to lift heavy objects weighing more than ten (10) pounds and will need any driving, pushing and pulling to be modified due to post surgical changes that have resulted in chronic pain.  Due to these chronic health concerns and frequent daily fatigue she may need frequent rest periods and breaks.  She should not be exposed to repetitive stressful situations as these may cause a severe stress reaction which will further exasperate her fatigue symptoms."

38.     On or about April 30, 2021, Defendants' Leave Management Team confirmed receipt of the documents from Plaintiff's medical provider and stated that Defendants would respond to her accommodation request.   Defendants further informed Plaintiff that her supervisors and Human Resources would be informed of her return-to-work date and requested accommodations.

39.     On or about April 30, 2021, Rider scheduled a phone call with Plaintiff for May 3, 2021.  Plaintiff reminded Rider that her return-to-work date was May 4, 2021 and inquired as to why the meeting was scheduled for May 3, 2021 instead of May 4, 2021.  Rider stated that Defendants wanted to provide her with a business update.

40. On or about May 3, 2021, the day before Plaintiff was scheduled to return to work, Rider and Shivali Panchal, Assistant Vice President, Human Resources Business Partner, Global Information Technology, notified Plaintiff that her employment was being terminated, effective July 3, 2021.

41. Defendants stated reason was that her position was eliminated due to a reorganization. Defendants informed Plaintiff that her position was redundant.

42. Defendants stated that Plaintiff's termination of employment was not based on her performance.

43. Defendants informed Plaintiff that Rider did not have a role in terminating Plaintiff's employment and that Woodward was involved in that decision.

44. During the termination meeting, Plaintiff complained that she was terminated while she was on medical leave for breast cancer, when she was scheduled to return to work the following day, and that she was terminated because of her disability and her seeking reasonable accommodations for her disability. Plaintiff asked why she was not transferred to an open position, unlike other employees, and received no legitimate response.

45. Plaintiff was notified of her termination while she was on a medical leave of absence for her disability, the day before she was scheduled to return to work with accommodations for her disability.

46. Plaintiff was the only employee reporting to Woodward who was terminated effective July 3, 2021.

47. On or about May 13, 2021, Defendants hired Joseph Dietzmann, an external candidate, into the newly created position of Vice President, End User Services Global Collaboration and Workplace Lead, reporting to Woodward.

48.     Plaintiff was qualified for the Vice President, End User Services Global Collaboration and Workplace Lead position. If Plaintiff had known that Defendants were terminating her employment, she would have applied for the position.

49.     Plaintiff was more qualified than Dietzmann for the Vice President, End User Services Global Collaboration and Workplace Lead position.

50.     On June 17, 2021, Woodward announced the hiring of three (3) other employees, in addition to Dietzmann, reporting into her team.

51.     Defendants hired Adrian Webberley into the newly created position of Enterprise Collaboration Tools Manager.

52.     Plaintiff was qualified for the Enterprise Collaboration Tools Manager position. If Plaintiff had known that Defendants were terminating her employment, she would have applied for the position.

53.     Plaintiff was more qualified than Webberley for the Enterprise Collaboration Tools Manager position.

54.     Defendants hired Jenni Dewar into the newly created position of Global Service Catalog Manager.

55.     Plaintiff was qualified for the Global Service Catalog Manager position. If Plaintiff had known that Defendants were terminating her employment, she would have applied for the position.

56.     Plaintiff was more qualified than Dewar for the Global Service Catalog Manager position.

57.     Defendants hired Debby McLaurin into the newly created position of End User Services Billing and Invoice Analyst.

58.     Plaintiff was qualified for the End User Services Billing and Invoice Analyst position. If Plaintiff had known that Defendants were terminating her employment, she would have applied for the position.

59.     Plaintiff was more qualified than McLaurin for the End User Services Billing and Invoice Analyst position.

60.     Defendants retained and/or hired less qualified, nondisabled employees and/or employees who had not sought reasonable accommodation for a disability or taken a medical leave of absence, in positions for which Plaintiff was more qualified.

61.     Defendants assigned Plaintiff's job duties and responsibilities to less qualified nondisabled employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence, including Dietzmann.

62.     Plaintiff's actual and/or perceived disability was a motivating and/or determinative factor in Defendants' decision to terminate her employment.

63.     Plaintiff's engaging in protected activity by requesting reasonable accommodations in connection with her disability was a determinative and/or motivating factor in Defendants' decision to terminate her employment.

64.     By terminating plaintiff's employment after she requested an accommodation for her disability, Defendants denied Plaintiff's reasonable accommodation request.

65.     By terminating plaintiff's employment after she requested an accommodation for her disability, Defendants failed to engage Plaintiff in the interactive process.

66.     Plaintiff's actual and/or perceived disability and/or record of impairment was a motivating and/or determinative factor in Defendants' decision not to hire Plaintiff into any role for which she was qualified, including the Vice President, End User Services Global

9

Collaboration and Workplace Lead position, the Enterprise Collaboration Tools Manager position, the Global Service Catalog Manager position, and the End User Services Billing and Invoice Analyst position.

67.    Plaintiff's engaging in protected activity by requesting a reasonable accommodation was a motivating and/or determinative factor in Defendants' decision not to hire Plaintiff into any role for which she was qualified, including the Vice President, End User Services Global Collaboration and Workplace Lead position, the Enterprise Collaboration Tools Manager position, the Global Service Catalog Manager position, and the End User Services Billing and Invoice Analyst position.

68.    By failing to place Plaintiff into a position for which she was qualified, Defendants failed to accommodate Plaintiff's disability.

69.    Defendants placed other employees into open positions after their positions were eliminated.

70.    By terminating Plaintiff's employment after she took FMLA leave, Defendants discriminated and retaliated against Plaintiff for invoking her rights under the FMLA.

71.    By failing to hire Plaintiff into any role for which she was qualified, including the Vice President, End User Services Global Collaboration and Workplace Lead position, the Enterprise Collaboration Tools Manager position, the Global Service Catalog Manager position, and the End User Services Billing and Invoice Analyst position, after she took FMLA leave, Defendants discriminated and retaliated against Plaintiff for invoking her rights under the FMLA.

72.    Plaintiff's invocation of her rights under the FMLA was a motivating and/or determinative factor in Defendants' decision to terminate her employment.

73.    Plaintiff's invocation of her FMLA rights was a motivating and/or determinative factor in Defendants' decision not to hire Plaintiff into any role for which she was qualified, including the Vice President, End User Services Global Collaboration and Workplace Lead position, the Enterprise Collaboration Tools Manager position, the Global Service Catalog Manager position, and the End User Services Billing and Invoice Analyst position.

74.    Defendants' violations of the FMLA were willful.

75.    As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred and may in the future incur a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

76.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT I – ADA

77.    Plaintiff incorporates herein by reference the paragraphs above, as if set forth herein in their entirety.

78.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated the ADA.

79.    Defendants acted with malice or a reckless indifference to Plaintiff's rights, thereby warranting the imposition of punitive damages.

80.    As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

81.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees

incurred as a result of the unlawful behavior complained of herein.

82.    No previous application has been made for the relief requested herein.

## COUNT II – FMLA

83.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

84.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated the FMLA.

85.    Said violations were willful.

86.    The imposition of liquidated damages is warranted.

87.    As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered the damages and losses set forth herein.

88.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

89.    No previous application has been made for the relief requested herein.

## COUNT III - NJLAD

90.    Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

91.    By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants violated NJLAD.

92.    Defendants' conduct as set forth herein was especially egregious.

93.    Members of Defendants' upper management had actual participation in, or willful indifference to, Defendants' wrongful conduct described herein, and their conduct warrants the imposition of punitive damages against Defendants.

94.     As a direct and proximate result of Defendants' violations of the NJLAD, Plaintiff has suffered the damages and losses set forth herein.

95.     Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

96.     No previous application has been made for the relief requested herein.

## COUNT IV – NJFLA

97.     Plaintiff incorporates by reference the paragraphs above, as if set forth herein in their entirety.

98.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the NJFLA.

99.     Said violations were intentional and warrant the imposition of punitive damages.

100.    As a direct and proximate result of Defendants' violations of the NJFLA, Plaintiff has suffered the damages and losses set forth herein.

101.    Plaintiff has incurred and is entitled to reasonable costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

102.    No previous application has been made for the relief requested herein.

## RELIEF

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.     declaring the acts and practices complained of herein to be a violation of the ADA;

b.      declaring the acts and practices complained of herein to be a violation of the FMLA;

c.      declaring the acts and practices complained of herein to be a violation of the NJLAD;

d.      declaring the acts and practices complained of herein to be a violation of the NFJLA;

e.      enjoining and restraining permanently the violations alleged herein;

f.      awarding Plaintiff back-pay;

g.      awarding Plaintiff front-pay;

h.      awarding interest;

i.      awarding compensatory damages to Plaintiff for past and future emotional upset, distress, and pain and suffering;

j.      awarding liquidated damages;

k.      awarding punitive damages;

l.      awarding Plaintiff the costs of this action, together with reasonable attorneys' fees;

m.      awarding Plaintiff such other damages as are appropriate under the ADA, FMLA, NJLAD, and NJFLA; and

n.      granting such other and further relief as this Court deems appropriate.

**CONSOLE MATTIACCI LAW, LLC**

Date:    November 15, 2022        By:    _____

STEPHEN G. CONSOLE
LANE J. SCHIFF
1525 Locust Street
Philadelphia, PA 19102
(215) 545-7676
(856) 545-8211 (fax)

Attorneys for Plaintiff,
Lynda Gadsby

15

# EXHIBIT A

| CHARGE OF DISCRIMINATION | | AGENCY | CHARGE NUMBER |
|---|---|---|---|
| This form is affected by the Privacy Act of 1974; See privacy statement before consolidating this form. | | ○ FEPA<br>**X** EEOC | |

| STATE OR LOCAL AGENCY: | | |
|---|---|---|

| NAME (Indicate Mr., **Ms.**, Mrs.)<br>**Lynda Gadsby** | HOME TELEPHONE NUMBER *(Include Area Code)*<br>REDACTED |
|---|---|

| STREET ADDRESS<br>REDACTED | CITY, STATE AND ZIP<br>Sicklerville, NJ 08081 | DATE OF BIRTH<br>REDACTED |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP, COMMITTEE, STATE OF LOCAL GOVERNMENT WHO DISCRIMINATED AGAINST ME (If more than one than list below)

| NAME<br>**Chubb Insurance Ltd;**<br>**Chubb INA Holdings, Inc.;**<br>**ACE American Insurance Company** | NUMBER OF EMPLOYEES, MEMBERS<br>> 20 | TELEPHONE (Include Area Code)<br>(800) 225-4500 |
|---|---|---|

| STREET ADDRESS<br>533 Fellowship Road Suite 120 | CITY, STATE AND ZIP<br>Mt. Laurel, NJ 08054 | COUNTY<br>Burlington |
|---|---|---|

| CAUSE OF DISCRIMINATION *(Check appropriate box(es))*<br>○ Race  ○ Color  ○ Sex  ○ Religion  ○ National Origin<br>**X** Retaliation  ○ Age  **X** Disability  ○ Other *(Specify)* | DATE DISCRIMINATION TOOK PLACE |  |
|---|---|---|
| | Earliest | Latest  07/03/2021 |

**The Particulars Are:**

A.    1.    Relevant Work History

I was hired by Respondents in or about May 26, 2013.  I last held the position of Assistant Vice President, Telecommunications North America and Telecom Department.  I reported to Sharra Woodward, Senior Vice President, Global Head End User Services.  Woodward reported to Michael Jones, Executive Vice President, Global Infrastructure and Information Technology Operations.

Respondents terminated my employment because of my disability, and/or my seeking reasonable accommodations for my disability, including a medical leave of absence.  Respondents assigned my job duties and responsibilities to, and retained in positions for which I was more qualified, nondisabled[a] employees and/or employees who had not sought reasonable accommodations[b] for a disability and/or employees who had not taken a medical leave of absence.  When I was terminated, I had almost eight (8) years of service at Respondents and was on a medical leave of absence, due to my breast cancer and related surgery, with an anticipated return to work date of the next day.

I consistently demonstrated positive performance and dedication to Respondents.  I performed my duties in a highly competent manner and received positive feedback.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures | NOTARY - (when necessary for State and Local Requirements) |
|---|---|
| | I swear of affirm that I have read the above charge and that it is true to the best of my knowledge information and belief. |
| I declare under penalty or perjury that the foregoing is true and correct. | |
| Date: 9/2/2001    Charging Party *(Signature):* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(Day Month, and year) |

[a] References herein to a person not having a disability are all to the best of my knowledge.
[b] References herein to a person not having sought reasonable accommodations or taken a medical leave of absence are all to the best of my knowledge.

**EEOC Charge of Discrimination**
**Initials of Charging Party –**

2.    Harm Summary

I have been discriminated against because of my disability (including history of and regarded as), and retaliated against because of my seeking reasonable accommodations for my disability, including taking a medical leave of absence. Evidence of the discriminatory and retaliatory conduct to which I have been subjected includes, but is not limited to, the following.

(a) Before reporting to Woodward, I reported to Louis Rider, Vice President, North America Systems. Rider reported to Steven Reich, Senior Vice President, North America Infrastructure. Reich reported Michael Jones, Executive Vice President, Global Infrastructure and Information Technology Operations.

(b) On or about August 5, 2020, in a meeting with Rider, I received a Meets Expectations mid-year performance review rating. I was told that I was doing a great job.

(c) In September 2020, I underwent scans, tests, and biopsies to determine whether I had a recurrence of breast cancer.

(d) On October 15, 2020, I was diagnosed with a recurrence of breast cancer.

(e) On October 15, 2020, following the above, I informed Rider that I was diagnosed with a recurrence of breast cancer. I told him that my biopsy surgery on October 9, 2020 showed that I had cancer in my other breast this time, and that I was unsure what stage of breast cancer I was in. I explained I would need to see additional doctors and surgeons, and undergo further tests, scans, and surgeries. I stated that I would keep him informed as to next steps.

(f) On October 16, 2020, I told Rider that my oncologist confirmed that I had the same breast cancer as I had when I was age twenty-three (23). I told Rider that I would know more about my prognosis after undergoing further tests, scans, surgeries, and doctor appointments. He told me to do what I needed to do and not to worry about work. I told him that a breast surgeon squeezed me into her schedule that afternoon for an appointment. I told him that I shared the same news with my direct report, Ann Komornicki, Senior Telecommunications Manager.

(g) On November 2, 2020, I told Rider that I was scheduled for surgery the following week. The surgery was a bilateral mastectomy with sentinel node removal. I stated that I would remain in the hospital for up to a week following the first surgery, and that recovery was expected to be approximately six (6) to eight (8) weeks. I explained that, since I had radiation in the past, I would have to undergo multiple reconstruction surgeries after my mastectomy, and possible chemotherapy, depending on how advanced the cancer was. I was visibly upset and told Rider that I cried a lot over the weekend. Rider told me that he was going to put me in contact with Human Resources regarding short term disability and medical leave. I expressed that I wanted to continue working and that I needed my job. Rider responded that I needed to focus on my health and take short term disability leave. Rider told me that my job would be there when I returned.

(h) Rider told me that he told Reich about my breast cancer and need for a medical leave of absence.

(i) On November 3, 2020, I went out of work on a medical leave of absence for breast cancer surgery, including a bilateral mastectomy with multiple reconstruction surgeries, and recovery.

(j) During my medical leave, I kept Rider informed of my surgeries and recovery.

2

EEOC Charge of Discrimination
Initials of Charging Party –

(k) On March 5, 2021, Rider told me that, effective immediately, I, along with his other
direct reports, would begin reporting to Woodward instead of to Rider. I asked if
Woodward was aware of my current medical condition, and Rider stated that she
knew I was battling cancer and was on medical leave. Rider told me that Reich and
Woodward were asking him why I was out of work on medical leave for so long.
Rider stated that Reich and Woodward asked when I was returning to work, and he
told them that I would return as soon as possible. Rider told me that I should
continue to communicate with him regarding my medical leave and return to work.

(l) On March 17, 2021, I informed Rider that I was scheduled to return to work on May 4,
2021. Rider stated that he would tell the same to Woodward.

(m) On April 14, 2021, I informed Rider that I would likely be returning to work with
restrictions as I continued to recover.

(n) On April 29, 2021, in documents that my doctor sent to Respondents, I confirmed my
return to work date of May 4, 2021, and requested reasonable accommodations for
my disability. My doctor's note stated the following: "Ms. Gadsby is clear to return to
work on 05/04/2021 with restricted work duties. Due to recent breast cancer and
surgical complication she has limited use of both her left and right arms. She is
unable to lift heavy objects weighing more than ten (10) pounds and will need any
driving, pushing and pulling to be modified due to post surgical changes that have
resulted in chronic pain. Due to these chronic health concerns and frequent daily
fatigue she may need frequent rest periods and breaks. She should not be exposed
to repetitive stressful situations as these may cause a severe stress reaction which
will further exasperate her fatigue symptoms."

(o) On April 30, 2021, in a phone call with Chris _____, Leave Management, he
confirmed that Respondents received the documents from my doctor, and told me
that someone would get back to me regarding my accommodation request. He
stated that he would inform my supervisors and Human Resources of my return to
work date and requested accommodations.

(p) On April 30, 2021, Rider scheduled a phone call for us to speak on May 3, 2021.
When I reminded Rider that my return to work date was May 4, 2021, and asked why
the meeting was scheduled for May 3 instead of May 4, he stated that he wanted to
get a business update over with.

(q) On May 3, 2021, in a phone call with Rider and Shivali Panchal, Assistant Vice
President, Human Resources Business Partner, Global Information Technology,
Respondent notified me that my employment was being terminated, effective July 3,
2021. The stated reason was that my position was eliminated due to a
reorganization. I asked what criteria was used to determine which positions were
eliminated, and I was told that my position was moved into End User Services, which
was led by Woodward. I was told that Woodward had a role in determining which
positions would be eliminated from her group. I asked why I was selected to be
terminated, and I was told that my position was redundant. I was told that there were
at least three (3) other employees who had the same role that I did and whose job
duties overlapped with mine. I received no explanation why I was terminated and
others were retained. I stated that I had no performance issues throughout my eight
(8) years of employment, and I was told that this was not a performance-based
termination. I complained that I was terminated while I was on medical leave for
breast cancer, when I was scheduled to return to work the following day, and that I
was terminated because of my disability and my seeking reasonable
accommodations for my disability. I asked why I was not transferred to an open
position, unlike other employees, and received no response.

3

EEOC Charge of Discrimination
Initials of Charging Party —

(r) I received a letter, dated May 4, 2021, signed by Reich, which stated the following: "The purpose of this letter is to notify you that it has been determined that a staff restructuring is necessary. As a result, I must regretfully inform you that your position will be eliminated on 07/03/2021."

(s) I was terminated while I was out of work on a medical leave of absence for my disability, the day before I was scheduled to return to work with accommodations for my disability.

(t) Respondents terminated my employment because of my disability and/or my seeking reasonable accommodations for my disability and/or my medical leave of absence.

(u) I received no explanation, including the selection criteria, as to why I was terminated and nondisabled employees who had not sought reasonable accommodations or taken a medical leave of absence were retained.

(v) I was the only employee reporting to Woodward who was terminated effective July 3, 2021.

(w) On or about May 13, 2021, Respondents hired Joseph Dietzmann, an external candidate, into the newly created Vice President, End User Services Global Collaboration and Workplace Lead position, reporting to Woodward. I was qualified for the position. I was more qualified for the position than the nondisabled, external candidate who had not sought reasonable accommodations for a disability or taken a medical leave of absence who was selected for the position. If I would have known that my employment was going to be terminated, I would have applied of the position.

(x) On June 17, 2021, in an email from Woodward to the End User Services team, she stated that she was "truly thrilled to announce several new team members that have recently joined the EUS team." I was qualified for each of the four (4) positions, held by nondisabled employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence, that were retained and moved under Woodward: Dietzmann; Adrian Webberley, Enterprise Collaboration Tools Manager; Jenni Dewar, Global Service Catalog Manager; Debby McLaurin, End User Services Billing and Invoice Analyst.

(y) I had no opportunity to remain employed with Respondents.

(z) Respondents retained less qualified, nondisabled employees and/or employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence in positions for which I was more qualified when I was terminated.

(aa) Before I disclosed my disability and went out on a medical leave of absence, I had no indication that my job was in jeopardy.

(bb) Respondents assigned a portion of my job duties, responsibilities, and direct reports to nondisabled employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence, including Dietzmann and Komornicki, who had reported to me. I was more qualified to perform my job duties and responsibilities than the nondisabled employees who had not sought reasonable accommodations for a disability or taken a medical leave of absence, including Dietzmann and Komornicki, to whom my job duties and responsibilities were assigned.

(cc) I had no performance or disciplinary issues throughout my employment with Respondents.

4

**EEOC Charge of Discrimination**
**Initials of Charging Party**

(dd) Respondents' disability discriminatory and retaliatory conduct has caused me emotional distress.

(ee) Respondents did not target or treat in the same way similarly situated nondisabled employees and/or employees who did not seek a reasonable accommodation for a disability or take a medical leave of absence.

B.    1.    Respondents' Stated Reasons

(a)    Respondents' stated reasons for terminating my employment are pretext for disability discrimination and/or retaliation for seeking reasonable accommodations for my disability and taking a medical leave of absence.

C.    1.    Statutes and Bases for Allegations

I believe that Respondents have discriminated against me based on my disability (including history of and regarded as), and retaliated against me based on my seeking reasonable accommodations for my disability, including taking a medical leave of absence for my disability, in violation of the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, *et seq.* ("ADA"), and the New Jersey Law Against Discrimination, as amended, N.J.S.A. § 10:5-1, *et seq.* ("NJLAD"), as set forth herein.

# EXHIBIT B



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Philadelphia District Office
801 Market St, Suite 1000
Philadelphia, PA 19107
(267) 589-9700
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 08/23/2022

**To:** Lynda Gadsby
REDACTED
Milford, DE 19963
Charge No: 530-2021-04997

EEOC Representative and email:     Legal Unit

(267) 589-9707

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 530-2021-04997.

On behalf of the Commission,

Digitally Signed By: Karen McDonough
08/23/2022

Karen McDonough
Deputy District Director

**Cc:**
Kelly Muller
Emily R Derstine Friesen


Please retain this notice for your records.